UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SUZETTE HINO,

           Plaintiff,

           v.                                       **DECISION AND ORDER**
                                                           17-CV-1060S
COMMISSIONER OF SOCIAL SECURITY,

           Defendant.
_____

        1.     Plaintiff Suzette Hino brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied her application for disability insurance benefits ("DIB") under Title II of the Act. (Docket No. 1). The Court has jurisdiction over this action under 42 U.S.C. § 405(g).

        2.     Plaintiff protectively filed an application for DIB with the Social Security Administration ("SSA") on February 10, 2014. (R.[1] at 16). Plaintiff alleged disability since May 1, 2008 due to bipolar disorder, unsuccessful bilateral knee replacements, generalized anxiety, anxiety attacks, hypersomnia, insomnia, and severe irritable bowel syndrome. (R. at 243). Plaintiff's application was denied (R. at 156), and Plaintiff thereafter requested a hearing before an administrative law judge ("ALJ") (R. at 164).

        3.     On May 23, 2016, ALJ George Bock held a hearing at which Plaintiff—represented by counsel—and Vocational Expert ("VE") Denise Waddell appeared and testified. (R. at 116-47). At the time of the hearing, Plaintiff was 53 years old (R. at 235),

---

[1] Citations to the underlying administrative record are designated as "R."

with a college education and had earned two master's degrees (R. at 123, 240). Plaintiff has past work experience as a librarian. (R. at 144, 244).

4. The ALJ considered the case *de novo* and, on June 20, 2016, issued a written decision finding that Plaintiff had not been under a disability between May 1, 2008 and December 31, 2013, Plaintiff's date last insured,[2] and denying Plaintiff's application for benefits. (R. at 16-25). On August 21, 2017, the Appeals Council denied Plaintiff's request to review the ALJ's decision. (R. at 1-3). Plaintiff filed the current action, challenging the Commissioner's final decision,[3] on October 20, 2017. (Docket No. 1).

5. Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 7,11). Plaintiff filed a response on July 13, 2018 (Docket No. 12), at which time this Court took the matter under advisement without oral argument. For the reasons that follow, Plaintiff's motion is denied, and Defendant's motion is granted.

6. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v.

---

[2] To be eligible to receive DIB, a claimant meet the insured status requirements of §§ 216(i) and 223 of the SSA. The last date on which a claimant met those requirements is the date last insured.
[3] The ALJ's February 12, 2016 decision became the final decision of the Commissioner of Social Security on this matter when the Appeals Council denied Plaintiff's request for review.

Perales, 402 U.S. 389, 401 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

7. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]. Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

8. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.  See 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled.  482 U.S. 137, 140-42 (1987).

9. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If [s]he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits [her] physical

or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider [her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [s]he has the residual functional capacity to perform [her] past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

10. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460 (1983).

11. The ALJ analyzed Plaintiff's claim for benefits under the process set forth above. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since May 1, 2008 through the end of the insured period. (R. at 18). At step two, the ALJ found that Plaintiff has the following severe impairments: moderate obesity, history of bilateral knee replacement, and bipolar disorder with anxiety. Id. At step three,

4

the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 19).

12. Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work with certain exceptions:

> [Plaintiff can] lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently; stand and walk 6 hours in an 8-hour day; sit 6 to 8 hours in an 8-hour day; never crawl or kneel; never climb ladders, ropes, or scaffolds; all other postural activities can be performed occasionally; [Plaintiff] can have no interaction with the general public and only occasional interaction with coworkers and supervisors.

(R. at 20).

13. At step four, the ALJ found Plaintiff is unable to perform any past relevant work. (R. at 24). At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. Id. Accordingly, the ALJ found that Plaintiff was not disabled from May 1, 2008 through December 31, 2013, the date last insured. (R. at 25).

14. Plaintiff argues the Commissioner's denial of benefits is not supported by substantial evidence because (1) the VE failed to identify jobs that can be performed by an individual with Plaintiff's RFC; (2) the ALJ failed to properly evaluate medical and opinion evidence; (3) the ALJ failed to properly develop the record and arbitrarily substituted his own judgment for competent medical opinion; and (4) the ALJ erred in failing to assess depression at step two. (Docket No. 7 at 17-30). Each of these arguments is addressed in turn.

15. Plaintiff argues that the VE's testimony "cannot provide a basis" (Id. at 30) for the ALJ's step five determination that "[Plaintiff had acquired work skills from past

5

relevant work that were transferable to other occupations with jobs existing in significant numbers in the national economy" (R. at 24). This argument is without merit.

16. The ALJ's RFC determination incorporated limitations on social interaction. (R. at 20). Specifically, "[Plaintiff] can have no interaction with the general public and only occasional interaction with coworkers and supervisors." Id. The VE testified that that a claimant with Plaintiff's education, work experience and RFC would not be able to perform past relevant work as a librarian due to the limitations on public interaction. (R. at 145).

17. According to the VE, this hypothetical individual would have skills transferrable to semi-skilled jobs, including file clerk and data entry clerk, and would also be capable of performing certain unskilled work, identifying jobs as a retail price marker and folding machine operator as viable options. Id.

18. Plaintiff's attorney cross-examined the VE about the limitations on supervisor interaction:

> Q. Haven't you found, in your experience, that interaction with supervisors is at the discretion of the supervisor and that that would be something that would be very difficult to place a limit on; that that could happen at any point in the day and at any portion of the day, subject to the supervisor's discretion?
>
> A. Well, yes, it could fluctuate, you know, but I'm defining occasional as, you know, interaction with the supervisor is somewhere between two, two and a half hours a day, which would still be quite a bit of interaction with a supervisor for these jobs.
>
> Q. Would there be a way, though, to be sure that it wouldn't exceed that?
>
> A. No.
>
> Q. There wouldn't be. Right. So it's so case specific, job specific, it's up to the discretion of the supervisor. Correct?

6

A. Yes.

(R. at 143-44).

19. Plaintiff claims this testimony, which merely acknowledges the common-sense assumption that a supervisor may exercise discretion in interacting with an employee, "amounts to placing a restriction upon someone other than Plaintiff (i.e., the supervisor)." (Docket No. 7 at 19). According to Plaintiff, this "limitation for only occasional interaction with supervisors is an 'accommodation,' which cannot be considered in disability determination." Id. at 30. Therefore, Plaintiff argues, "the VE's testimony […] cannot provide a basis for the ALJ['s] findings at step five." Id. at 19.

20. In support, Plaintiff cites to Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795 (1999) and to Social Security Ruling ("SSR") 00-1c. Id. at 17-18. However, these references are inapposite.

21. SSR 00-1c "concerns whether an individual's claim for, or receipt of, disability insurance benefits filed under the [SSA] would preclude the individual from pursuing relief under the Americans with Disabilities Act (ADA)." SSR 00-1c, Disability Ins. Benefits-Claims Filed Under Both the Soc. Sec. Act & the Americans with Disabilities Act, 2000 WL 38896 (Jan. 7, 2000). Plaintiff seeks no relief under the ADA, therefore SSR is inapplicable here. Rotolo v. Comm'r of Soc. Sec., No. 6:16-CV-1252 (WBC), 2017 WL 6343673, at *8 (N.D.N.Y. Dec. 11, 2017), (aff'd sub nom. Rotolo v. Berryhill, 741 F. App'x 851 (2d Cir. 2018)).

22. The Supreme Court's ruling in Cleveland clarified that an individual who files for SSA disability benefits is not precluded from also pursuing relief under the ADA. Cleveland, at 1601-1604. The Cleveland Court also discussed a discrepancy between

7

the two statutes, noting that the ADA definition of a "qualified individual" expressly includes consideration of how "reasonable accommodation" would affect a claimant's ability to perform work, whereas "[b]y way of contrast, when the SSA determines whether an individual is disabled […], it does *not* take the possibility of 'reasonable accommodation into account.'" Id. at 803 (emphasis in original). The Court explained the SSA does not consider "reasonable accommodation" due to the large volume of claims it receives annually and the differences between SSA and ADA disability assessment procedures and criteria. Id. at 803-04.

23. Thus, Cleveland stands for the proposition that consideration of "reasonable accommodation" is simply not part of the SSA disability determination process. It does not, however, support Plaintiff's argument that any limitation on supervisor interaction necessarily constitutes "an 'accommodation' [and] cannot provide a basis for the ALJ's findings at step five." (Docket No. 7 at 19).

24. In fact, similar accommodation-based arguments have been found to be "specious." Straite v. Berryhill, No. 3:16-CV-00006 (FDW), 2017 WL 4052170, at *4, 2017 U.S. Dist. LEXIS 147942, at *13 (W.D.N.C. Sept. 13, 2017) (wholly rejecting plaintiff's argument that a sit/stand option was a "reasonable accommodation" that "necessitates a finding of 'disabled.'"); see also Rotolo at *8 (2017); Connor v. Berryhill, No. 5:17-CV-123, 2018 WL 4441234, at * 3 (W.D.N.C. Sept. 17, 2018). Accordingly, Plaintiff's first argument fails.

25. Plaintiff also contends that the ALJ failed to properly evaluate the objective findings of psychiatrist Howard C. Wilinsky M.D., as well as the opinions of mental health

8

providers Melissa Merlin, PMHNP and Sophia Miller, LCSW. (Docket No. 7 at 19-22, 24-28).

26. On May 19, 2011, Plaintiff was referred to Dr. Wilinsky for psychiatric consultation. Notes from the mental status examination indicated Plaintiff "moves and speaks slowly," "pays little attention to the needs of the interviewer," and [t]here are immature intonations to her speech." (R. at 330.) The report also indicates Plaintiff's "[t]hought pattern is often circumlocutory and vague," she "often neglects to provide important information" and she could not recall specific dates of events. Id.

27. Despite failing to demonstrate "good 'detail' memory" during the consultation, Dr. Wilinsky found no deficits in Plaintiff's insight, judgment and concentration. Id. In addition, Dr. Wilinsky found Plaintiff's "[t]hought content reveals accurate reality testing," "[s]he is oriented in all spheres" and "[i]ntellect is assessed as probably average." Id.

28. Referencing these notes, Plaintiff asserts: "Dr. Wilinsky's objective findings demonstrate that Plaintiff is severely limited in her ability to interact with others, concentrate, and remember very simple items." (Docket No. 7 at 21). Plaintiff also claims, these findings "indicate that Plaintiff is unable to interact with coworkers and supervisors on even an occasional basis, and further demonstrate that she has significant difficulties with concentration and memory." Id.

29. These claims are flatly contradicted by the record cited, which clearly states Dr. Wilinsky found that Plaintiff's "[i]nsight, judgment, and concentration are *not* currently impaired." (R. at 330) (emphasis added).

30. Plaintiff points out that Dr. Wilinsky reevaluated Plaintiff on June 14, 2011, at which time "[Plaintiff] display[ed] pressure of thought and speech" and Dr. Wilinsky recommended "very gradually" eliminating Plaintiff's current antidepressant medications and starting on mood-stabilizers. (R. at 332). This observation also falls far short of Plaintiff's claims of complete inability to function in any work environment.

31. Plaintiff further argues that "[b]ecause the text of the ALJ decision contains no reference to Dr. Wilinsky's examinations, it can be assumed that the ALJ never considered them." (Docket No. 12 at 4). Unfortunately, Plaintiff's claim lacks precedential support. Contra Black v. Apfel, 143 F.3d 383, 386 (8th Cir.1998) ("Although required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted. An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered.") (internal citations omitted).

32. Because Dr. Wilinsky consulted on Plaintiff's case on only two occasions less than one month apart and did not present objective findings that contradict the ALJ's RFC determination, this Court finds no error in the ALJ's failure to discuss these records.

33. Plaintiff also objects to the ALJ's evaluation of opinions submitted by two of Plaintiff's mental health providers. (Docket No. 7 at 24).

34. On May 3, 2016, Melissa Merlin, PMHNP completed a medical treating source statement of mental impairment. (R. at 854-56). Ms. Merlin rated most of Plaintiff's mental abilities relevant to unskilled work as "fair," but noted Plaintiff had a "poor" ability to respond to changes in a routine work setting. Id. Ms. Merlin further opined that Plaintiff's condition existed and persisted as described since Plaintiff's first visit to her on October 15, 2012. (R. at 856).

35. The ALJ gave little weight to NP Merlin's statement because it "was completed almost two and a half years after the relevant period, which substantially diminishes its relevance." (R. at 23). Moreover, the ALJ noted that Ms. Merlin had "observed fairly routine mental status examinations and clinical findings" inconsistent with the 2016 statement. Id.

36. On October 16, 2012, Ms. Merlin's examination of Plaintiff found "[n]o apparent anxiety, depression, or agitation." (R. at 775). Plaintiff was alert and oriented; demonstrated adequate attention, concentration and judgment; appropriate insight; normal impulse control; and normal thought processes without dementia or overt illogical thinking. Id. Ms. Merlin's objective findings were very similar on November 16, 2012 (R. at 777-78), December 17, 2012 (R. at 779-80), January 4, 2013 (R. at 781-82), February 1, 2013 (R. at 783-84), March 1, 2013 (R. at 785-86), March 29, 2013 (R. at 787-88), April 26, 2013 (R. at 789-90), May 24, 2013 (R. at 791-92), June 21, 2013 (R. at 793-94), August 16, 2013 (R. at 795-96), and October 16, 2013 (R. at 797-98).

37. Ms. Merlin's 2016 opinion that Plaintiff had only a "fair" ability to perform unskilled work activities, defined as a "[s]ubstantial loss of ability to perform the named activity in regular, competitive employment" that dated back to October 2012 is inconsistent with Ms. Merlin's own objective findings during that period. Thus, the ALJ's rejection of Ms. Merlin's mental medical source statement is without error. See Woodmancy v. Colvin, 577 F. App'x 72, 75 (2d Cir. 2014) (ALJ properly accorded little weight to treating physicians' opinions that were contradicted by record evidence of unremarkable clinical findings).

38. Similarly, the ALJ gave little weight to mental medical source statements completed by therapist Sophia Miller "in September 2014 and in May 2016, respectively." (R. at 23). The ALJ explained "[a]lthough Ms. Miller supported the findings on both forms with narrative statements, both assessments are wholly inconsistent with the objective clinical findings and mental status examinations of [Plaintiff's] mental health treatment providers." Id.

39. By the form dated September 6, 2014, Ms. Miller opined that Plaintiff had "marked" or "extreme" restrictions in any "ability to respond appropriately to supervision, co-workers, and work pressures in a work setting." (R. at 673). In support of these debilitating limitations, Ms. Miller wrote: "[Plaintiff] does not go in public unaccompanied; avoids social and other public situations; increase in [illegible] when under stress; withdraws, decreases self care; [Plaintiff] is unable to get up at times for many days; difficulty problem solving, OCD." Id. Ms. Miller further opined Plaintiff is "unable to follow through with daily tasks," including daily tasks and parenting which require shopping, cooking, or cleaning. Id.

40. Subsequently, in 2016, Ms. Miller rated Plaintiff's mental abilities as "poor/none," meaning a "[c]omplete loss of ability to perform the named activity in regular, competitive employment and in a sheltered work setting" in nearly every possible area. (R. at 858-60) (emphasis in original). The ALJ also found these limitations inconsistent with the record of "largely normal" mental status examinations and the absence of psychiatric hospitalizations, explaining "[t]he objective evidence simply does not support such extreme and debilitating restrictions." (R. at 23). Moreover, the ALJ found these

assessments inconsistent with Ms. Miller's own notes of Plaintiff's increases in social involvement.  Id.

41. On April 14, 2012, Plaintiff reported "getting more socially involved" (R. at 927), and on May 3, 2012, Plaintiff "report[ed] that she is more involved with PTA and is even considering volunteering" (R. at 929).

42. Plaintiff's mood was worse on June 14, 2012, although Ms. Miller's objective findings were largely normal.  (R. at 934).  Ms. Miller noted that upon exam, Plaintiff's thought processes demonstrated "flight of ideas", but her associative thinking, judgment and insight were all intact and her attention span and concentration were normal.  Id.

43. On September 6, 2012, Plaintiff informed Ms. Miller "I got a job." (R. at 940.) Plaintiff, who has a master's degree in Library Science, planned to begin volunteering in her son's library.  Id.  In October 2012, Plaintiff was volunteering twice per week and "likes to be around people, but had to deal with her anxiety being around others."  (R. at 942).

44. On December 13, 2012, Plaintiff reported that she "avoids social situations, but has been able to socialize more [and] has increased her volunteering role in a school library." (R. at 944).  Ms. Miller observed Plaintiff's attention span and concentration were normal, but judgment and insight were mildly impaired.  Id.

45. Over the next year, Plaintiff reported fluctuations in mood as well as social interaction and anxiety levels, but Ms. Miller's objective findings were routinely normal and she observed no deficits in attention span, concentration, judgment or insight.  (R. at 946, 948, 950, 952, 954, 956).

46. As the ALJ correctly noted, Ms. Miller's own objective findings are inconsistent with her 2014 and 2016 opinions. (R. at 23). Therefore, it was not error to reject those opinions.

47. Next, Plaintiff argues the ALJ failed to develop the record and arbitrarily substituted his own judgment for competent medical opinion. (Docket No. 7 at 22). The ALJ generally has an affirmative duty to develop the record due to the nonadversarial nature of the proceeding. Burgess v. Astrue, F.3d 117, 128 (2d Cir. 2008). However, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." Rosa v. Callahan, 168 F.3d at 79 n.5 (quoting Perez v. Chater, 77 F.3d 41, 48 (2d Cir. 1996)).

48. Here, the record contains hundreds of pages of treatment records, evaluations, and examinations. (R. at 329-1017). Plaintiff has not pointed to any missing records the ALJ should have sought, nor suggested the record before the ALJ was inadequate in any other way. Nevertheless, Plaintiff contends:

> The ALJ decision failed to point to any evidence of record, opinion or otherwise, to support its finding that Plaintiff's only mental limitations are those in her ability to interact with the general public, coworkers, and supervisors. The ALJ here substituted his own judgment for that of competent medical opinion.

(Docket No. 12 at 9).

49. This is simply untrue. The ALJ discussed the objective medical evidence of record, including treatment notes, clinical findings, medical imaging studies, and physical and mental status examinations, as well as Plaintiff's self-reported daily activities. (R. at 20-23). The record demonstrates routinely normal cognitive functioning

along with mood swings and anxiety, all of which the ALJ considered. (R. at 18-23). Therefore, Plaintiff's conclusory claims are unavailing.

50. Plaintiff finally argues the ALJ failed to properly consider Plaintiff's depression at step two. (Docket No. 7 at 28). Defendant responds that Plaintiff's depression is a part of her bipolar disorder and that the ALJ properly evaluated Plaintiff's mental impairments at step two. (Docket No. 11 at 21). This Court agrees.

51. Plaintiff claims that she "was diagnosed with depression by consulting psychiatrist, Dr. Wilinsky" as well as by multiple mental health providers. (Docket No. 7 at 29). However, Dr. Wilinsky's opinion after reevaluating Plaintiff on June 14, 2011, was that "[Plaintiff] was more consistent [with] bipolar disorder" (R. at 744) and he recommended discontinuing Plaintiff's antidepressant medications and starting her on a mood-stabilizing medication (R. at 332).

52. Accordingly, Ms. Miller changed Plaintiff's diagnosis from major depressive disorder ("MDD") (889, 891) to bipolar disorder (R. at 893, 895) in June 2011. The ALJ was not required to consider an obsolete diagnosis at step two.

53. Having reviewed the ALJ's decision in light of Plaintiff's arguments, this Court finds no error in the ALJ's determination. The decision contains an adequate discussion of the medical evidence supporting the ALJ's determination that Plaintiff was not disabled between May 1, 2008 and December 31, 2013, and Plaintiff's aforementioned arguments are unavailing. Plaintiff's Motion for Judgment on the Pleadings is therefore denied, and Defendant's motion seeking the same relief is granted.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 7) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 11) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:      June 27, 2019
               Buffalo, New York

                                                /s/William M. Skretny
                                                WILLIAM M. SKRETNY
                                               United States District Judge